IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-01601-REB-MJW

RONALD RICHARDSON, on behalf of himself and all others
(Now and in the future will be) similarly situated,

Plaintiff,

v.

JOHN HICKENLOPER [sic], Governor of Colorado,
DOUGLAS K. WILSON, State Public Defender,
JAMES F. O'CONNOR, II, Head Administrator (ACPO),
GRAYSON ROBINSON, Sheriff of Arapahoe County,
JANE/JOHN DOE(s), Arapahoe County JCC,
JOHN DOE, Commissioner of Arapahoe County,
JOHN/JANE DOE(s), (ACDF) Classification Committee,
(These defendants are sued jointly and severally, in their official and/or individual capacities),
DAVID WALCHER, Bureau Chief at (ACDF), in his individual capacity, and
L. PEREA, in his official capacity,

Defendants.

---

**RECOMMENDATION ON**
**(1) DEFENDANTS ROBINSON, WALCHER AND PEREA'S MOTION TO DISMISS (Docket No. 31),**
**(2) MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6) BY DEFENDANTS JOHN HICKENLOOPER, DOUGLAS K. WILSON, AND JAMES F. O'CONNOR II (Docket No. 47), and**
**(3) PLAINTIFF'S MOTION FOR LEAVE TO AMEND (Docket No. 49)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to United States Magistrate Judge issued by Judge Robert E. Blackburn on July 5, 2011.  (Docket No. 7).

2

Pro se plaintiff Ronald Richardson is a pretrial detainee at the Arapahoe County Detention Facility ("ACDF"). He alleges the following in his Prisoner Complaint brought pursuant to 42 U.S.C. § 1983 (Docket No. 1). Claim One asserts violations of the First, Fifth, Sixth, and Fourteenth Amendments. Plaintiff has been denied the right to a conflict-free attorney and to be heard by the court at a meaningful time and manner as a result of insufficient funding by the Governor which has caused the State Public Defender to implement defective policies, directives, practices, and procedures that allow Deputy Public Defenders to transfer "back and forward" to County Public Defender Offices throughout the state seeking better working conditions. The Head Administrator of the Arapahoe County Public Defender has implemented such defective policies, directives, procedures, and practices whereby two of the three Deputy Public Defenders assigned to represent the plaintiff were allowed to relocate to other offices for better working conditions and/or for job promotion. As a result, plaintiff's criminal matter has been transferred three times and placed at the bottom of the Deputy Public Defender's excessive backlog. The three appointed Deputy Public Defenders have caused excessive delays for over 22 months in the plaintiff's criminal matter. In addition, they have caused the denial of his request to provide him with a copy of "the emergency 911 call, the discovery, and his instanity [sic] evaluation report." (Docket No. 1 at 4).

In Claim Two, plaintiff raises violations of the Fifth and Fourteenth Amendments based upon the Arapahoe County Officials subjecting him at ACDF to overcrowded conditions by triple celling (housing three detainees in a cell, forcing the third to sleep on a mattress on the floor) in a cell that is approximately six feet by eight feet in size; insufficiently trained staff; under staffing; unsanitary, cold, and non-nutritious meals;

3

inadequately-maintained floor drains that expose him to toxic gas; unsanitary air conditions, dry rot, mold, and mildew; lock downs for 18 to 23 hours because all available deputies must respond to inmate-on-inmate attacks and prisoner suicides; insufficient showers; and inadequate pod space to accommodate the furniture, exercise station, and 48 detainees.

Plaintiff seeks punitive damages for duress and a preliminary injunction enjoining the defendants from housing three pretrial detainees in a cell with less than 30 square feet per person, locking down the whole facility because a prisoner committed suicide, and the unsanitary use of trustees who are not medically-cleared food handlers.

Now before the court for a report and recommendation are the following three motions: (1) Defendants Robinson, Walcher and Perea's Motion to Dismiss (Docket No. 31); (2) Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) by Defendants John Hickenlooper, Douglas K. Wilson, and James F. O'Connor II (Docket No. 47); and (3) Plaintiff's Motion for Leave to Amend (Docket No. 49). Plaintiff has not filed a response to the two motions to dismiss. The time to respond to the motion for leave to amend has not run, but pursuant to D.C.COLO.L.CivR 7.1(C), "[n]othing in this rule precludes a judicial officer from ruling on a motion at any time after it is filed."

The court has carefully considered the Complaint, the above-mentioned motions, the court's file, and applicable Federal Rules of Civil Procedure and case law. The court now being fully informed makes the following findings, conclusions of law, and recommendations.

**MOTIONS TO DISMISS**

Defendants Sheriff Robinson, former ACDF Bureau Chief Walcher (in his

4

individual capacity), and unserved current ACDF Bureau Chief Perea (who has been substituted for Walcher in his official capacity - see Docket No. 17) move to dismiss the Prisoner Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the following grounds: (1) plaintiff has failed to properly invoke this court's jurisdiction and/or set forth a claim upon which relief can be granted, (2) plaintiff's assertions against them are essentially based upon a theory of *respondeat superior* liability and fail to set forth viable claims for relief, and (3) defendants Robinson and Walcher are entitled to qualified immunity. Defendants Governor Hickenlooper, Colorado Public Defender Wilson, and Arapahoe County Public Defender's Office Head O'Connor (the "State Defendants") seek dismissal of the Prisoner Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6) on the following grounds: (1) the claims against them in their official capacities must be dismissed for lack of jurisdiction and failure to state a claim; (2) abstaining from hearing plaintiff's claims pursuant to Younger is appropriate in this matter; (3) plaintiff's ineffective assistance of counsel claim is a state tort claim, and no federal jurisdiction lies; (4) plaintiff's claim for violation of the right to a speedy trial cannot be based on the action or inaction of public defenders; and (5) they are entitled to qualified immunity.

> Rule 12(b)(1):
>
> empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994). Statutes conferring jurisdiction on federal courts are to be strictly construed. *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party

5

> asserting jurisdiction. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).
>
> Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. *See id.* at 1003. A court's consideration of evidence outside the pleadings will not convert the the motion to dismiss to a motion for summary judgment under Rule 56. *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp. 2d 1091, 1094-95 (D. Colo. 2001).

Under Rule 8(a)(2), a pleading must contain "a short and plaint statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp., 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . .

6

Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Khalik v. United Air Lines, – F.3d –, 2012 WL 364058, at *2 (10th Cir. Feb. 6, 2012). The Circuit court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" Id. The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." Khalik, supra at *2 (quoting

Iqbal, 129 S. Ct. at 1949)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." Id.

Since the plaintiff is not an attorney, his pleading and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

### **Claim One**

Plaintiff alleges that three deputy public defenders have represented him on his pending criminal charge(s) at different times because the first two moved to other offices, which has resulted in a 22-month delay causing a violation of his right to a speedy trial, and that these deputy public defenders have not obtained certain evidence, resulting in ineffective assistance of counsel. These alleged deficiencies are purportedly due to inadequate funding by the Governor, as well as the Public Defender allowing his deputies to transfer between offices. Plaintiff seeks punitive damages for duress.

The State Defendants first correctly assert that the claims brought against them

8

for monetary damages in their official capacities should be dismissed. "[T]he Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." Hunt v. Bennett, 17 F.3d 1263, 1267 (10th Cir. 1994). Accordingly, plaintiff's official capacity claim for damages should be dismissed with prejudice.

Furthermore, this court agrees with the State defendants that abstention would be proper with regard to the plaintiff's first claim pursuant to Younger v. Harris, 401 U.S. 37, 44 (1971). The Younger doctrine is based "on notions of comity and federalism, which require that federal courts respect state functions and the independent operation of state legal systems." Phelps v. Hamilton, 122 F.3d 885, 889 (10th Cir. 1997). "To assure this end, *Younger* articulated a narrow exception now applied to state criminal, . . . civil, . . . or administrative proceedings . . . which commands a federal court to abstain from exercising jurisdiction when three conditions have been established." Taylor v. Jaquez, 126 F.3d 1294, 1297 (10th Cir. 1997). "First, there must be ongoing state criminal, civil, or administrative proceedings. Second, the state court must offer an adequate forum to hear the federal plaintiff's claims from the federal lawsuit. Third, the state proceeding must involve important state interests, matters which traditionally look to the state law for their resolution or implicate separately articulated state policies." Id.

"Although the original *Younger* holding was limited to the proposition that injunctive relief was subject to abstention, the Tenth Circuit has expanded the doctrine to include declaratory and monetary relief as well . . . ." Flanders v. Snyder Bromley, 2010 WL 2650028, at *4 (D. Colo. June 30, 2010). See D.L. v. Unified Sch. Dist. No. 497, 392 F.3d 1223, 1228 (10th Cir. 2004) ("[T]he *Younger* doctrine extends to federal

claims for monetary relief when a judgment for the plaintiff would have preclusive effects on a pending state-court proceeding."); Gilbertson v. Albright, 381 F.3d 965, 979-80 (9th Cir. 2004) (en banc) ("*Younger* principles may apply to claims for damages under § 1983. Damages suits that turn on a constitutional challenge to pending state proceedings implicate the reasons for *Younger* abstention as much as equitable or declarative relief action because to determine whether the federal plaintiff is entitled to damages–and to determine whether the federal defendant is entitled to immunity–the district court must first decide whether a constitutional violation has occurred. . . . It would frustrate the state's interest in administering its judicial system, cast a negative light on the state court's ability to enforce constitutional principles, and put the federal court in the position of prematurely or unnecessarily deciding a question of federal constitutional law. Therefore, a determination that the federal plaintiff's constitutional rights were violated would be just as intrusive as a declaratory judgment.").

Here, the criminal charges against the plaintiff are pending in Arapahoe County. The proceedings in state court offer an adequate forum in which the plaintiff can challenge the charges lodged against him on speedy trial grounds, as well as ineffective assistance of counsel. "[S]tate control over criminal justice [is] a lynchpin in the unique balance of interests" of federalism. In re Troff, 488 F.3d 1237, 1240 (10th Cir. 2007) (citing Younger, 401 U.S. at 44). Nothing in the Complaint here suggests there are extraordinary circumstances requiring this court's interference in state court criminal proceedings.

"The rational for *Younger* abstention can be satisfied, however, by just staying proceedings on the federal damages claim until the state proceeding is final." D.L. v.

10

Unified Sch. Dist. No. 497, 392 F.3d at 1228.  Nevertheless, while this court agrees that abstention on this claim would be appropriate here, rather than recommending a stay, this court recommends dismissal of the claim pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff's claims essentially concern an allegation of ineffective assistance of counsel. Such claims and such other claims concerning actions whose unlawfulness would render a conviction invalid, however, are not actionable under § 1983 unless and until the plaintiff is convicted on the pending criminal charge(s) and that conviction is later invalidated on those grounds.  See Heck v. Humphrey, 512 U.S. 477, 486 (1994) ("[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, **or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid**, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.") (emphasis in bold added); Roberts v. Childs, 125 F.3d 862 (table), 1997 WL 634103, at *1 (10th Cir. Oct. 10, 1997) ("Insofar as [plaintiff] seeks monetary damages stemming from the alleged ineffective assistance of counsel . . .  Such claims [are] unactionable under § 1983 unless and until [he] is convicted on the pending criminal charge and that conviction is later invalidated on those grounds.").  Furthermore, to state a claim under § 1983, plaintiff must allege that a right secured by the Constitution or law of the United States was violated and that the

alleged violation was committed by a person acting under color of state law. See Jenkins v. Currier, 514 F.3d 1030, 1032 (10th Cir. 2008). Here, even if the plaintiff could eventually prove ineffective assistance of counsel, he cannot state a § 1983 claim against the public defenders because there would be no state action. See Polk County v. Dodson, 454 U.S. 312 (1981) (public defenders do not act "under color of state law" when representing a defendant in a state criminal proceeding). See also Guinn v. Unknown Lakewood Police Officers, 2010 WL 4740326 (D. Colo. Sept. 30, 2010) (Section "1983 is not an appropriate remedy for a claim of ineffective assistance of counsel. Claims of ineffective assistance should be brought either on direct appeal in the criminal case or on habeas review."), report and recommendation adopted by 2010 WL 4740316 (D. Colo. Nov. 16, 2010). Accordingly, this court recommends that defendants' motion to dismiss Claim One be granted based upon the plaintiff's failure to state a claim upon which relief can be granted.

**Claim Two**

As stated above, plaintiff alleges that as a pretrial detainee at ACDF, he has been subjected to overcrowded conditions by triple celling (housing three detainees in a cell, forcing the third to sleep on a mattress on the floor) in a cell that is approximately six feet by eight feet in size; insufficiently trained staff; under staffing; unsanitary, cold, and non-nutritious meals; inadequately-maintained floor drains that expose him to toxic gas; unsanitary air conditions, dry rot, mold, and mildew; lock downs for 18 to 23 hours because all available deputies must respond to inmate-on-inmate attacks and prisoner suicides; insufficient showers; and inadequate pod space to accommodate the furniture, exercise station, and 48 detainees. Defendants Robinson, Walcher, and Perea seek

12

dismissal of this claim.

"Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, . . . the Eighth Amendment standard provides the benchmark for such claims." Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998) (citation omitted). "The Eighth Amendment requires jail officials to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." Id. (quotations omitted).

To establish an Eighth Amendment conditions-of-confinement claim, "a plaintiff must satisfy two requirements, consisting of an objective and [a] subjective component." McBride v. Deer, 240 F.3d 1287, 1291 (10th Cir. 2001) (quotation omitted). To satisfy the objective component, an inmate must allege facts to demonstrate that the "deprivation was sufficiently serious." Fogle v. Pierson, 435 F.3d 1252, 1260 (10th Cir. 2006). Plaintiff must establish that he was denied "the minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. 337, 347 (1981), under conditions posing a substantial risk of serious harm. See Farmer v. Brennan, 511 U.S. 825, 828 (1994). "The subjective component requires the jail official to have a sufficiently culpable state of mind. In the context of prison-conditions claims, the required state of mind is one of deliberate indifference to inmate health and safety." McBride, 240 F.3d at 1291 (quotation omitted). Further, because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the circumstances, nature, and duration of the challenged conditions must be carefully considered." DeSpain v. Uphoff, 264 F.3d 965, 974 (10th Cir. 2001) (citations and

internal quotations omitted). Here, this court finds that Claim One should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because it does not plead enough facts to state a claim to relief that is plausible on its face. Plaintiff does not allege sufficient facts concerning the conditions of his confinement which, taken individually or as a whole, rise to the level of a constitutional violation.

"Overcrowding itself is not an unconstitutional condition, and becomes actionable only if it leads to deprivation of food, proper sanitation, or medical care, or where it is accompanied by dangerous conditions." Carani v. Meisner, 2010 WL 3023805, at *13 (D. Colo. July 30, 2010) (citing Robeson v. Squadrito, 57 F. Supp.2d 642, 647 (N.D. Ind. 1999) (inmate forced by overcrowding to sleep on floor for five weeks, suffering a sore back, failed to state a constitutional claim); Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). Defendants correctly note that many courts, including this court, have held that there is no constitutional violation for mere triple-celling or triple-bunking pretrial detainees. See, e.g., Hubbard v. Taylor, 538 F.3d 229 (3rd Cir. 2008) (triple-celling was rationally related to prison officials' legitimate government interest); Lucero v. Hilkey, Civil Case No. 06-cv-01467-WDM-CBS, 2008 WL 552863, at *7 (D. Colo. Feb. 27, 2008) (citing North v. White, 152 Fed. Appx. 111 (3rd Cir. 2005) (finding no Eighth Amendment violation where, due to a temporary influx of inmates, facility resorted to triple-celling of one-third of inmates for a month, since facility was otherwise well maintained; and ventilation, light, sanitation, and food met applicable minimal standards); Smith v. Crose, 2006 WL 2591075, at *7 (D. N.J. Sept. 8, 2006) (placement in a cell designed for two but containing four beds not cruel and unusual punishment)).

In this case, plaintiff alleges that he was required to sleep on a mattress on the

floor for an unspecified period of time before being move to the bunk bed. Such a claim itself, however, does not rise to the level of a constitutional violation. Burdex v. Wyatt, 2011 WL 864849, at *10 (W.D. Okla. Jan. 27, 2011), report and recommendation adopted, 2011 WL 864839 (W.D. Okla. Mar. 10, 2011) (citing Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (fact that inmate may have to sleep temporarily upon a mattress on the floor when a bunk is not available does not in itself rise to the level of a constitutional violation); Rhodes, 452 U.S. at 348 (holding that even though a jail housed 38% more inmates than its design capacity, "[t]he double celling made necessary by the unanticipated increase in prison population" did not violate the Eighth Amendment because no deprivation of "essential food, medical care, or sanitation" occurred); Bell v. Wolfish, 441 U.S. 520, 534 (1979) (the fact that the conditions of pretrial detention may interfere with a person's desire to live as comfortably as possible and with as little restraint as possible dose not convert the conditions in the jail facility to "punishment" within the constitutional sense)). As noted by the defendants, plaintiff has not alleged any adverse effects from sleeping on the mattress on the floor or from being required to sleep in a triple bunk bed.

Plaintiff also alleges that he is subjected to occasional 18- to 23-hour lock downs because all deputies must respond to inmate attacks or inmate suicides. Such a claim also does not state an Eighth Amendment violation. Plaintiff's own allegations reflect that the occasional lock down is based upon a legitimate penological purpose to maintain the safety, security, and internal order within the ACDF, namely, the need for officers to respond to attacks or suicides. Further, he does not allege he is placed in such a lock down status for an extended period. See Bell v. Wolfish, 441 U.S. at 1878

15

("maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees"); Smith v. Lamberti, 2010 WL 5791516, at *2 (S.D. Fla. Dec. 10, 2010) ("Punitive restrictions or conditions may be constitutionally placed on pre-trial detainees, provided that the restrictions further some legitimate governmental objective (such as . . . maintaining safety, internal order, and security within the institution) and are not excessive in light of the seriousness of the violation."), report and recommendation adopted, 2011 WL 529920 (S.D. Fla. Feb. 8, 2011).

Plaintiff has also not plead enough facts to state a claim to relief that is plausible on its face regarding the other claims concerning his conditions of confinement. Defendants correctly assert that the plaintiff does not provide any context to his conclusory claim that staff are insufficiently trained and that there are understaffing problems. Plaintiff also makes a conclusory allegation that he is being served food that is cold and not nutritious. While the Eighth Amendment requires that prisoners receive food that is adequate to maintain health, plaintiff has not plead enough facts to state a claim to relief that is plausible on its face regarding the lack of nutrition of the meals being provided. Furthermore, service of cold food, while perhaps unpleasant, does not violate the Constitution. See Hamm v. DeKalb County, 774 F.2d at 1575 ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional violation."). In addition, plaintiff has not alleged any facts that show that the conditions under which meals have been served are sufficiently serious or have caused any injury to his health and well-being. Plaintiff

16

has also failed to state a claim with respect to his conclusory allegations about the failure to maintain floor drains and ventilation, the presence of mold, dry rot, mold, and mildew, and a crowded pod area. He has not stated sufficiently serious deprivations, and he has not alleged any specific injury from these alleged conditions. See Dittmeyer v. Whetsel, 91 Fed. Appx. 111, 119 (10th Cir. 2004) (plaintiff did not show how overcrowding injured him); Shrader v. White, 761 F.2d 975 (4th Cir. 1985) (mold in showers where there was no evidence of disease or illness is not an unconstitutional condition of confinement); Cox v. Grady County Detention Center, 2008 WL 1925052 (W.D. Okla. Apr. 29, 2008) (inmate's "bare allegation of mold in the showers does not create a reasonable inference regarding the sort of threat to his mental or physical well being with is necessary for violation of the Eighth Amendment."). "[M]ere discomfort which poses no risk to health and safety does not implicate the Eighth Amendment." Dittmeyer, 91 Fed. Appx. at 119.

In sum, plaintiff has alleged in very conclusory terms that the conditions of his confinement are generally unconstitutional, and he has not alleged with any particularity any facts to show that these alleged conditions adversely affected him. "[P]laintiff must do more than claim a foul. He must state with sufficient particularity what the foul involved, who was involved, and when and where it took place. It is not sufficient to use legal jargon and bald conclusions." Moore v. Trapp, 1991 WL 65074, at *2 (10th Cir. Apr. 24, 1991) (affirming dismissal of § 1983 complaint alleging, among other things, overcrowding, plumbing problems, no physical exercise, no lights, no personal sanitation, inadequate diet, and lack of access to the courts); Robinson v. Gibson, 1999 WL 1009497, at *2 (10th Cir. Nov. 8, 1999) (affirming dismissal of § 1983 conditions-of-

confinement claim alleging the roof leaked, portions of the ceiling were caving in, raw sewage flowed through the area, the electrical wiring was dangerous, and the food was not hot and sometimes contained insects as such allegations were vague and conclusory). Therefore, it is recommended that the defendants' motion to dismiss be granted.

**MOTION FOR LEAVE TO AMEND THE COMPLAINT**

On January 31, 2012, plaintiff filed a Motion for Leave to Amend (Docket No. 49) in which plaintiff seeks to add a "free speech and barred court claims" and "articulate more clearly how the staff's underfunding and understaffing denied him of due process and equal protection of the laws." (Docket No. 49 at 1). Attached to his motion is a Third Claim for relief in which he alleges a violation of the First and Fourteenth Amendments, asserting the following. The Sheriff and Bureau Chief implemented a "defective mailing policy and regulations that required pretrial detainees at (ACDF), having requested to be provided a certified copy of his inmate trust fund account statement, must forward an open enveloped (addressed to the court) to the unknown property supervisor and she would insert the document into said addressed envelope (outside the prisoner presence) then she would file said pleadings with the court on his behalf." (Docket No. 49 at 3). On October 3, 2010, plaintiff made a formal request to be provided a certified copy of his inmate trust fund statement, but he was advised by the POD Deputy that according to the property supervisor, the plaintiff was required to submit an envelope addressed to the court, including a copy of the court order requesting information. Plaintiff submitted a grievance a week later, and on October 14, 2010, the property supervisor wrote plaintiff advising she will send out plaintiff's account

printout with a certified letter; that plaintiff must provide an open addressed envelope. Seven months elapsed during which plaintiff repeatedly took exception to this mailing procedure. "Plaintiff maintains that these defendants' unreasonable mailing policy/regulations abridged his freedom of speech, and right to be heard by the Courts at a meaningful time and in a meaningful manner." (Docket No. 49 at 4, ¶ 6). Plaintiff attached numerous exhibits to his motion.

Pursuant to Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." Bylin v. Billings, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993)). Here, this court finds that plaintiff's proposed amendment to his pleading would be futile. A prisoner claiming a denial of access to the courts must allege some **actual injury** in his ability to pursue a nonfrivolous legal claim. See Lewis v. Casey, 518 U.S. 343, 349-55 (1996); Penrod v. Zavaras, 94 F.3d 1399, 1403 (10th Cir. 1996). In this case, plaintiff has made no allegation of actual injury as a result of the ACDF mailing procedure. Furthermore, plaintiff has not alleged personal involvement by any of the defendants in this new claim for relief. Also, the facts as alleged show that the actors intended to send the certified account statement to the court; plaintiff merely had to provide an addressed envelope. Such actions do not support a claim that plaintiff was denied access to the court.

19

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Defendants Robinson, Walcher and Perea's Motion to Dismiss (Docket No. 31) be **granted**. It is further

**RECOMMENDED** that the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) by Defendants John Hickenlooper, Douglas K. Wilson, and James F. O'Connor II (Docket No. 47) be **granted**. It is further

**RECOMMENDED** that the Plaintiff's Motion for Leave to Amend (Docket No. 49) be **denied**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: February 10, 2012           s/ Michael J. Watanabe
       Denver, Colorado           Michael J. Watanabe
                                            United States Magistrate Judge